**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

**2014 MSPB 81**

Docket No. SF-0752-13-3562-I-1

**Corinne S. Yee,[1]**

**Appellant,**

**v.**

**Department of the Navy,**

**Agency.**

October 30, 2014

Corinne S. Yee, Honolulu, Hawaii, pro se.

James J. Schubert, Esquire, Joint Base Pearl Harbor-Hickam, Hawaii, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1    The appellant has petitioned for review of an initial decision that affirmed the agency's furlough action.  For the following reasons, we conclude that the petitioner has not established a basis under 5 C.F.R. § 1201.115 for granting the petition for review.  We therefore DENY the petition for review and AFFIRM the

---

[1] Pursuant to 5 C.F.R. § 1201.36(a), this appeal was part of a consolidation, *NAVFAC Employees–Hawaii v. Department of the Navy*, MSPB Docket No. SF-0752-14-0265-I-1.

initial decision AS MODIFIED by this Opinion and Order, still affirming the furlough action.[2] The initial decision is MODIFIED by providing additional support for the administrative judge's determination that the agency met its burden of proving that the furlough promoted the efficiency of the service.

## BACKGROUND

¶2     The agency issued a decision notice furloughing the appellant for no more than 11 workdays days from her GS-0905-14 General Attorney position. *Yee v. Department of the Navy*, MSPB Docket No. SF-0752-13-3562-I-1, Initial Appeal File (IAF), Tab 1 at 58-60.[3] The proposal notice indicated that the action was based on "the extraordinary and serious budgetary challenges facing the Department of Defense (DOD) for the remainder of Fiscal Year (FY) 2013, the most serious of which is the sequester that began on March 1, 2013," i.e., across-the-board reductions to federal budgetary resources caused by the Budget Control Act of 2011, as amended by the American Taxpayer Relief Act of 2012. *Id*. at 52.

¶3     On appeal, the appellant asserted that the action was not in accordance with law because DOD was not authorized to order the Department of the Navy (Navy or agency) to furlough its employees, and there was enough funding within the Navy to avoid a furlough. IAF, Tab 1 at 10-11; *see* IAF, Tab 8 at 3-4. In this regard, the appellant alleged that the agency that took the action was her

[2] In affirming the initial decision we have addressed only those arguments raised by the appellant on petition for review. *See* 5 C.F.R. § 1201.115 (the Board normally will consider only issues raised in a timely filed petition for review or cross petition for review). Because the appellant, for example, has not challenged the administrative judge's rejection of her argument that the agency should not have furloughed her because the majority of her work was funded by reimbursements from nongovernmental entities, rather than from appropriated funds, we do not address that finding at this time.

[3] The appellant indicated that the agency ultimately furloughed her for 6 days. IAF, Tab 2 at 3.

employing office, the Navy, as opposed to DOD, and that the Navy did not establish that the furlough promoted the efficiency of the service of the Navy, which she contends was fiscally sound and had sufficient finances to pay its civilian employees. IAF, Tab 8 at 3-6. She also asserted that the majority of her work as a real estate attorney is funded by reimbursements from nongovernment entities pursuant to 10 U.S.C. § 2695, rather than from appropriated funds and that the agency should not have furloughed her to the extent of those reimbursable funds because it "save[d] nothing from furloughing me when I would be performing work in connection with a real estate agreement to a non-governmental entity." IAF, Tab 1 at 11-12; *see* IAF, Tab 8 at 2, 8-9. The appellant further asserted that the agency did not implement the furlough in a fair and even manner because it did not furlough all civilian employees working at the Pearl Harbor Naval Shipyard, including three attorneys who, like the appellant, were part of the agency's Office of General Counsel. IAF, Tab 8 at 7-8. The appellant also alleged that the agency committed harmful error. IAF, Tab 1 at 12-14.

¶4      The administrative judge consolidated this appeal with other appeals from various appellants with similar issues, circumstances, and/or defenses. *NAVFAC Employees–Hawaii v. Department of the Navy*, MSPB Docket No. SF-0752-14-0265-I-1, Consolidated Appeal File (CAF), Tabs 1-2. Based on the written record, because the appellant did not request a hearing, the administrative judge affirmed the furlough action. CAF, Tab 24, Initial Decision (ID) at 1, 15. The administrative judge found that the agency proved that the furloughs promoted the efficiency of the service because the furloughs were a reasonable management response to the sequestration. ID at 3-4. In this regard, the administrative judge found unpersuasive the appellants' argument that DOD's budget situation was irrelevant because the Navy had adequate funding to avoid the furloughs. ID at 4. The administrative judge held that it was reasonable for DOD to consider its budget situation holistically, rather than isolating each

individual military department's situation, because DOD had the authority to transfer appropriated or working-capital funds from one account to another. ID at 4. In addition, the administrative judge found it undisputed that sequestration caused sharp cuts to the Navy's accounts, and therefore the Navy had a legitimate need to find ways to cut its spending. ID at 4. Thus, the administrative judge held that the agency need not have proven that there was an actual deficit—in the sense that it literally could not pay its employees their full salaries without violating the Antideficiency Act—to justify the furlough; rather, it need only have shown that the furloughs were a reasonable response to the financial situation. ID at 4.

¶5        The administrative judge further found unpersuasive the appellants' argument that they should not have been furloughed because their salaries were paid through working-capital funds rather than direct appropriations. ID at 5. The administrative judge held that DOD had some authority to "tap its working capital funds if it needed money for other purposes; it therefore was appropriate for the agency to try to conserve the working capital funds so that they could be drawn upon if needed to meet more urgent needs." ID at 5. The administrative judge also noted that the agency submitted unrebutted evidence that, because of sequestration, agency components funded through appropriations were planning to reduce their orders for working-capital-fund activities; therefore, unless working-capital-fund activities reduced their own operating costs, they risked running deficits. ID at 5. The administrative judge held that the agency had a legitimate reason to include working-capital-fund employees in the furloughs because the furloughs of employees paid by working-capital funds were expected to save more than $500 million. ID at 5.

¶6        The administrative judge rejected the argument made by the appellant, a real estate attorney, that her furlough was improper because the agency is reimbursed for some of her work under 10 U.S.C. § 2695, which allows the agency to accept money to cover its administrative expenses in entering real

estate transactions. ID at 5-6. In this regard, the administrative judge found that the appellant offered no evidence that her furlough actually caused the agency to lose, rather than merely delay, any reimbursement from nongovernmental entities under section 2695, did not show that the agency had to earmark any funds it collected specifically to pay for her salary as opposed to other program expenses, and did not show that the funds received during the furlough period would have covered her full salary. ID at 6. In any event, the administrative judge found that the agency's decision to save money immediately by furloughing the appellant but risk forgoing reimbursement for the work she would have done was a resource-allocation decision beyond the scope of the Board's review. ID at 6 ("Perhaps it would have been more cost-effective to make the cuts elsewhere, but the Board does not review the agency's decision to allocate furlough days in a particular manner among employees who were not similarly situated.").

¶7 The administrative judge further found that the agency determined which employees to furlough in a fair and even manner, offering evidence that it imposed the furloughs uniformly on all civilian employees with a limited set of exceptions, and generally providing reasonable explanations for the exceptions. ID at 6. The administrative judge noted that, although many of the appellants challenged the exception of employees who worked directly for the Navy shipyard, the agency excepted these employees because it would be particularly difficult to make up delays in maintenance work on nuclear vessels, and these vessels were critical to mission success. ID at 6. Further, although the exception apparently included not just the employees actually performing the maintenance work but also the administrative and professional staff that supported their work, such as three attorneys employed by the Pearl Harbor shipyard who were excepted, the administrative judge found that the appellants were not similarly situated to the shipyard employees because the shipyard was in a separate organizational unit from the Naval Facilities Engineering Command, and thus in a separate competitive area. ID at 6-7. Alternatively, the administrative judge held

that, even if the appellants were similarly situated to the shipyard employees, the agency's reason for excepting the shipyard employees—the need to avoid maintenance delays for nuclear vessels—was a legitimate management reason for the disparate treatment. ID at 7. The administrative judge determined that, because the agency was excepting the actual workers on the vessels, it was reasonable for the agency to anticipate that the need for support services, such as legal work, would remain higher for the shipyards and therefore to except the employees who provided those services as well. ID at 7-8.

¶8 Finally, the administrative judge found, among other things, that the appellants did not prove harmful error, a violation of their constitutional right to due process, national origin discrimination, retaliation for protected activity, or discrimination based on military service. ID at 11-15.

## ANALYSIS

¶9 The appellant asserts on review that the "agency" in this case is the Navy because it is her employing office and that, although the agency provided evidence of DOD's factual basis for the furlough and that the furlough promoted the efficiency of the service of DOD, it did not present evidence showing the Navy's factual basis for the furlough and that the furlough promoted the efficiency of the service of the Navy. Petition for Review (PFR) File, Tab 1 at 2, 4, 6. The appellant contends that the Navy is separately organized under the Secretary of the Navy, even though it operates under the authority, direction, and control of the Secretary of Defense. *Id.* at 4.

¶10 We agree with the appellant that the "agency" that took the action against her was the Navy. Nevertheless, we disagree with her contention that the agency was required to prove that the furlough promoted the efficiency of the service solely as it related to the Navy. Pursuant to 5 U.S.C. § 7513(a), under regulations prescribed by the Office of Personnel Management (OPM), an agency may take an action, such as a furlough of 30 days or less, "against an employee only for

such cause as will promote the efficiency of the service." *See* 5 U.S.C. § 7512(5). OPM's regulations similarly provide that an agency may take an adverse action "only for such cause as will promote the efficiency of the service." 5 C.F.R. § 752.403(a). Thus, the question is whether the phrase "efficiency of the service" should be interpreted consistent with the appellant's allegation that the agency was required to prove that the furlough promoted the efficiency of the service of the Navy.

¶11    The starting point for any case involving statutory interpretation is the language of the statute itself, which must be examined to determine Congress's intent and purpose. *Adkins v. Office of Personnel Management*, 104 M.S.P.R. 233, ¶ 12 (2006), *aff'd*, 525 F.3d 1363 (Fed. Cir. 2008). In construing statutes, their provisions should not be read in isolation; rather, each section of a statute should be construed in connection with every other section so as to produce a harmonious whole. *Styslinger v. Department of the Army*, 105 M.S.P.R. 223, ¶ 17 (2007). Moreover, it is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning. *Id*., ¶ 30.

¶12    Here, it does not appear that the term "service" has been defined by statute or regulation for purposes of that term's use in either 5 U.S.C. § 7513(a) or 5 C.F.R. § 752.403(a). We note, however, that section 7513(a) does include the term "employee," which is defined in part as either "an individual in the competitive service," "a preference eligible in the excepted service," or "an individual in the excepted service (other than a preference eligible)." 5 U.S.C. § 7511(a)(1). The record reflects that the appellant is a nonpreference eligible in the excepted service. IAF, Tab 1 at 62. Thus, for purposes of this appeal, the agency may take an action against "an individual in the excepted service" only for such cause as will promote the efficiency of the "service." *See* 5 U.S.C. § 7513(a). In other words, when sections 7511(a)(1) and 7513(a) are construed in connection with each other, section 7513(a) essentially provides that an agency

may take an adverse action against an individual in the competitive or excepted service, or a preference eligible in the excepted service, only for such cause as will promote the efficiency of the competitive or excepted service, as applicable. *See Johnson v. Department of Veterans Affairs*, 91 M.S.P.R. 405, ¶ 11 (2002) (when a word is used in the same section of a statute more than once, and the meaning is clear in one place, the word will be given the same meaning in any other place).  We therefore find that the term "service" in section 7513(a) should generally be read in the broader sense of meaning the civil or federal service, which includes both the competitive and excepted service, rather than the service of a particular agency.  *See* 5 U.S.C. § 2101 (for purposes of Title 5 of the United States Code, the "civil service" consists of all appointive positions in the executive, judicial, and legislative branches of the government of the United States, except positions in the uniformed service); 5 U.S.C. § 2103(a) (the "excepted service" consists of those civil service positions that are not in the competitive service or the Senior Executive Service).  Although the Navy may ordinarily show that an action promotes the efficiency of the service by establishing a connection or nexus that relates solely to the operations of the Navy, we find that section 7513(a) is not so limiting under the facts of this case; its requirements can be met by showing a connection or nexus between the action in question and the efficiency of the civil service more generally.[4]

---

[4] We need not decide whether this interpretation of 5 U.S.C. § 7513(a) applies in other contexts beyond the special relationship, explained more fully below, that exists between a military department, such as the Navy, and DOD.  *See* 5 U.S.C. § 105 (for purposes of Title 5 of the United States Code, "executive agency" means an executive department, a government corporation, and an independent establishment); 5 U.S.C. § 101 (DOD is an executive department); 10 U.S.C. § 111(a)-(b) (DOD is an "executive department" and is "composed of," among other things, the Navy); *Francis v. Department of the Navy*, 53 M.S.P.R. 545, 549 (1992) (the organizational history of DOD indicates that the military service departments were intended to function—at least with respect to personnel matters—with the independence that generally characterizes

¶13　　This interpretation of 5 U.S.C. § 7513(a) is consistent with general Board principles relating to the efficiency of the service, as well as earlier versions of section 7513(a).  An agency satisfies the efficiency of the service standard in a furlough appeal by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a fair and even manner.  *Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 8 (2013).  Here, the appellant has shown no error in the administrative judge's determination that the Navy's furlough was a reasonable management solution to the financial restrictions placed on it by DOD.  *See* ID at 3-5.

¶14　　Similarly, the Board has long held that, in order to promote the efficiency of the service, there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his or her duties satisfactorily or some other legitimate governmental interest promoting the efficiency of the service.  *Hoofman v. Department of the Army*, 118 M.S.P.R. 532, ¶ 16 (2012), *aff'd*, 526 F. App'x 982 (Fed. Cir. 2013); *Risner v. Federal Aviation Administration*, 7 M.S.P.R. 480, 485-86 (1981), *aff'd*, 677 F.2d 36 (8th Cir. 1982); *see Doe v. Hampton*, 566 F.2d 265, 272 (D.C. Cir. 1977).  Here, that "other legitimate governmental interest," which bears a clear and direct relationship to the appellant's furlough, consists of the serious budgetary challenges facing DOD as a whole, which the appellant does not dispute on review.  In this regard, we note that, although the Navy is separately organized under the Secretary of the Navy, it operates under the authority, direction, and control of the Secretary of Defense.  *See* 10 U.S.C. § 5011.  In particular, the Secretary of the Navy is responsible to the Secretary of Defense for, among other things, "the effective and timely implementation of policy,

---

executive departments outside DOD, rather than the limited kind of independence that generally characterizes organizations within those departments).

program, and budget decisions and instructions of the President or the Secretary of Defense relating to the functions" of the Navy. 5 U.S.C. § 5013(c)(3). Thus, we agree with the administrative judge that, although the appellants asserted that the Navy had adequate funding to avoid the furloughs, it was reasonable for DOD to consider its budget situation holistically, rather than isolating each individual military department's situation. *See* ID at 4.

¶15       In addition, the substantive ground for taking an adverse action under 5 U.S.C. chapter 75 has been essentially unchanged in the civil service law since 1912 with the enactment of the landmark Lloyd-LaFollette Act. *Lovshin v. Department of the Navy*, 767 F.2d 826, 830 (Fed. Cir. 1985). The Lloyd-LaFollette Act of 1912 provided that "no person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing." Lloyd-LaFollette Act of 1912, ch. 389, § 6, 37 Stat. 539, 555; *see Bush v. Lucas*, 462 U.S. 367, 383 (1983). Thus, under this provision, an agency needed to show that its action promoted the efficiency of the "civil service" of the United States. With the passage of the Veterans' Preference Act of 1944, furlough actions were, for the first time, subject to the same procedural requirements as removals and other adverse actions, at least as to actions against preference eligibles. *Hastie v. Department of Agriculture*, 24 M.S.P.R. 64, 68 (1984), *overruled on other grounds by Horner v. Andrzjewski*, 811 F.2d 571, 574-77 (Fed. Cir. 1987). Section 14 of the Veterans' Preference Act of 1944 provided that no permanent or indefinite preference eligible who has completed a probationary or trial period "employed in the civil service," or in any establishment, agency, bureau, administration, project, or department created by Acts of Congress or Presidential Executive Order, shall be discharged, suspended for more than 30 days, furloughed without pay, reduced in rank or compensation, or debarred for future appointment "except for such cause as will promote the efficiency of the service and for reasons given in writing." Veterans' Preference Act of 1944, Pub. L. No.

78-359, 58 Stat. 387, 388, 390. Similar to the Lloyd-LaFollette Act, the reference to the "efficiency of the service" in the Veterans' Preference Act of 1944 is preceded by a reference to the "civil service," suggesting that an agency could meet its burden by showing that its action promoted the efficiency of the "civil service" of the United States. The appellant has not alleged, and there is no indication, that Congress intended any change in meaning in the current version of the law.

¶16　　　Accordingly, we find that the agency has proven by preponderant evidence that the furlough action of the appellant promoted the efficiency of the service. The agency's furlough action is, therefore, AFFIRMED.

## ORDER

¶17　　　This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.